**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| PADMANABHA REDDY IRAGAMREDDY<br>203 Olentangy Xing W.<br>Delaware, Ohio 43015, | : <br> :   Case No.:    2:26-CV-543<br> :<br> :   Judge:    _____ |
|             Plaintiff, | :<br> : |
|         v. | :<br> :   **COMPLAINTAND JURY DEMAND**<br> :   **(Jury Trial Demanded)** |
| TATA CONSULTANCY SERVICES LIMITED<br>c/o Agent: CT Corporation System<br>4400 Easton Commons Way, Suite 125<br>Columbus, OH 43219, | :<br> :<br> :<br> :<br> :<br> : |
|             Defendants. | :<br> : |

Plaintiff Padmanabha Reddy Iragamreddy ("Plaintiff"), for his Complaint against Defendant Tata Consultancy Services Limited ("Defendant" or "TCS"), states as follows:

**PARTIES, JURISDICTION & VENUE**

1. Plaintiff Padmanabha Reddy Iragamreddy is an individual residing in Ohio and, at all times relevant to this action, was employed by Defendant in Ohio.

2. Defendant Tata Consultancy Services Limited is a business entity that employed Plaintiff and conducted business in Ohio at all times relevant to this action.

3. This is an action for age discrimination arising out of Defendant's handling of Plaintiff's internal staffing, redeployment, bench placement, and ultimate separation from employment.

4. This Court has subject-matter jurisdiction over Count One under 28 U.S.C. § 1331 because that claim arises under the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq.

5. This Court has supplemental jurisdiction over Count Two under 28 U.S.C. § 1367 because that claim forms part of the same case or controversy as the federal claim.

6. Defendant is, and at all relevant times was, an employer within the meaning of the ADEA.

7. Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, Plaintiff worked here during the relevant period, and Defendant transacted business and directed the challenged employment practices here.

8. Plaintiff timely filed a charge of discrimination with the Ohio Civil Rights Commission and the Equal Employment Opportunity Commission on or about January 9, 2026, alleging age-based discrimination arising from Defendant's employment practices.

9. The charge was dual-filed with the Ohio Civil Rights Commission and the Equal Employment Opportunity Commission, and more than sixty days have elapsed since the filing of the charge.

10. On or about March 12, 2026, the Ohio Civil Rights Commission issued a determination and Notice of Right to Sue with respect to the allegations at issue. Plaintiff has therefore satisfied all conditions precedent to the filing of this action. To the extent a federal Notice of Right to Sue is issued by the Equal Employment Opportunity Commission, Plaintiff will amend this Complaint to reflect such issuance.

11. This case is not a petition for judicial review of an administrative order. It is a de novo civil action against Plaintiff's employer for independent statutory violations. Plaintiff does not seek judicial review of the Commission's determination but instead brings this independent civil action based on Defendant's underlying unlawful conduct.

**STATEMENT OF FACTS**

12. At all times relevant to this action, Plaintiff was employed by Defendant as a senior-grade associate in TCS's United States operations, including work associated with banking and financial-services accounts.

13. Plaintiff was over the age of forty during the events described in this Complaint and was therefore within the class protected by the ADEA and Ohio's age-discrimination laws.

14. Plaintiff was qualified for his position and for comparable internal assignments. He possessed substantial skills, experience, and work history within Defendant's business, and he remained able and willing to continue working for Defendant.

15. Defendant used an internal Resource Management Group, or "RMG," to manage employees who were available for reassignment or approaching release from an active project.

16. Within TCS, an employee without an active project assignment was effectively placed on the "bench" or treated as unallocated while awaiting internal redeployment.

17. On information and belief, Defendant used centralized "Consolidated US GEO available and future releases" distributions as a principal channel through which managers identified available associates for open internal requirements.

18. Those distributions were not merely general summaries. The underlying spreadsheets identified employees by name, skillset, status as "Available" or "Future Release," release date, RMG, prior client, grade, and years of experience.

19. The accompanying cover emails instructed managers to use the pool affirmatively for staffing. Managers were asked to propose associates for open requirements, maximize internal closures, and internally screen and review the listed associates for fulfillment.

20. The same cover emails also stated that associates proposed for other projects would remain in the list pending feedback and that managers should revert within two working days because TCS could not hold opportunities for associates longer.

21. Those directions demonstrate that inclusion in the pool was materially connected to whether an available employee would receive meaningful consideration for reassignment.

22. Plaintiff does not allege that Defendant was required to keep him indefinitely on a project that had naturally run its course. Plaintiff alleges that, once his prior assignment was winding down, Defendant denied him fair access to the redeployment process and the internal openings for which Defendant was actively soliciting candidates.

23. Before Plaintiff became unallocated, Defendant directed Plaintiff to engage in a structured knowledge transfer to another associate.

24. After that knowledge transfer, another associate assumed or continued responsibilities that Plaintiff had been performing.

25. On information and belief, the associate who received Plaintiff's transferred responsibilities was younger than Plaintiff and was not within Plaintiff's senior grade band.

26. The reassignment of Plaintiff's work to another associate undermines any suggestion that Plaintiff lacked useful skills, that his work had no continuing value, or that Defendant had no need for employees capable of performing comparable duties.

27. By late September 2025, Plaintiff was available or imminently available for redeployment and should have been visible through the same internal process Defendant was using to surface available and future-release associates.

28. The pool files in Defendant's ordinary-course staffing process show that senior-grade

associates in the C4/C5 band were included in the pool before Plaintiff became unallocated.

29. More specifically, the June 20, 2025 pool contained 55 C4/C5 associates out of 567 total listed associates, the August 29, 2025 pool contained 28 C4/C5 associates out of 308 total listed associates, the September 16, 2025 pool contained 40 C4/C5 associates out of 351 total listed associates, and the September 18, 2025 pool contained 42 C4/C5 associates out of 368 total listed associates.

30. The composition of the pool then shifted abruptly. The September 25, 2025 pool contained zero C4 or C5 associates out of 395 total listed associates, the October 1, 2025 pool contained zero C4 or C5 associates out of 382 total listed associates, and the October 3, 2025, pool contained zero C4 or C5 associates out of 397 total listed associates.

31. Thus, the relevant internal data reflect that senior-grade associates were present in the pool through mid-September 2025, but by September 25, 2025, and continuing into October 2025, Defendant's pool distributions no longer included any C4 or C5 associates at all.

32. Plaintiff was within that C4/C5 senior-grade band.

33. Plaintiff also did not appear in the late-September and early-October pool distributions during the period in which he was available or imminently available for reassignment.

34. By the time Plaintiff needed the pool and its corresponding review process, his grade band had disappeared from the operative distribution mechanism, and Plaintiff himself was absent from the same distributions.

35. The abrupt disappearance of the C4/C5 band did not occur because Defendant stopped using the pool. To the contrary, Defendant continued circulating the same type of pool, in

materially the same format, with materially the same instructions to managers, while continuing to list hundreds of lower-grade associates.

36. On information and belief, the C4/C5 band disproportionately consisted of older employees, including employees over forty, and the sudden exclusion of that band therefore fell more harshly on older workers.

37. Plaintiff repeatedly sought continued employment and fair access to internal opportunities. He was not seeking special treatment or a manufactured position. He sought meaningful access to the same internal openings for which Defendant was actively requesting candidates through the pool process.

38. Despite that, Defendant did not provide Plaintiff with meaningful RMG-led interviews, documented manager engagement, or a genuine opportunity to compete for reassignment through the ordinary staffing mechanism Defendant claims to have used.

39. During the administrative process, Defendant took the position that Plaintiff's resume had been circulated through standard channels.

40. That explanation was materially incomplete and misleading because the internal pool data show that the principal redeployment mechanism being used by managers no longer included Plaintiff's grade band and did not include Plaintiff at the very time he needed reassignment consideration.

41. The existence of a nominal or generalized "circulation" process did not provide Plaintiff with meaningful consideration for reassignment where the operative staffing mechanism actually used by managers—the pool distributions identifying available associates— excluded Plaintiff and his senior grade band during the relevant period.

42. Lower-grade and less senior associates continued to appear in the pool and continued to

receive consideration for open requirements while Plaintiff and his grade band were excluded from the operative process.

43. Defendant thereafter left Plaintiff on the bench without genuine redeployment and ultimately ended Plaintiff's employment in late 2025.

44. Defendant's actions caused Plaintiff to lose wages, benefits, employment opportunities, and other compensation and advantages of employment.

45. Defendant's conduct was intentional, knowing, and carried out with at least reckless disregard for Plaintiff's protected rights.

46. Plaintiff pursued administrative remedies promptly following his termination and the denial of meaningful redeployment opportunities, including the filing of a formal charge of discrimination on January 9, 2026, which provided Defendant and the relevant agencies with notice of the claims asserted herein.

**COUNT I**
**AGE DISCRIMINATION IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT, 29 U.S.C. § 623(a)(1) AND § 623(a)(2)**

47. Plaintiff incorporates the foregoing paragraphs as if fully rewritten herein.

48. Plaintiff was a member of the class protected by the ADEA because he was over the age of forty.

49. Plaintiff was qualified for his position and for comparable internal assignments for which Defendant was using its redeployment process.

50. Defendant subjected Plaintiff to adverse employment actions, including denying him meaningful reassignment consideration, excluding him from the operative staffing mechanism used to identify available associates, leaving him unassigned on the bench without genuine redeployment, and ultimately terminating his employment.

51. Defendant took those actions because of Plaintiff's age.

52. Defendant's proffered reliance on resume circulation and standard staffing procedures was pretextual because the internal staffing mechanism TCS was actually using no longer included Plaintiff's senior grade band and did not include Plaintiff himself during the relevant redeployment period.

53. The timing of Plaintiff's unallocation, the transfer of Plaintiff's duties to another associate, the disappearance of Plaintiff's grade band from the pool, the continued circulation of hundreds of lower-grade associates, and the absence of meaningful redeployment activity together permit the inference that age was a determinative factor in Defendant's treatment of Plaintiff.

54. In the alternative, Defendant used a facially neutral employment practice—its pool-distribution and internal-screening process for available and future-release associates—in a manner that disproportionately excluded older workers, including Plaintiff, from meaningful access to internal openings.

55. That practice and its late-September 2025 configuration were not based on reasonable factors other than age, as the exclusion of Plaintiff's grade band was not tied to individualized assessments of qualifications, performance, or legitimate business needs, but instead operated categorically to remove senior-level employees from the principal redeployment channel.

56. Defendant's violation of the ADEA was willful, entitling Plaintiff to liquidated damages in an amount permitted by law.

57. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer loss of pay, loss of benefits, loss of future earnings, and other damages

recoverable under the ADEA.

**COUNT II**
**AGE DISCRIMINATION IN VIOLATION OF OHIO REVISED CODE §§ 4112.02(A), 4112.052, AND 4112.14(A)**

58. Plaintiff incorporates the foregoing paragraphs as if fully rewritten herein.

59. Plaintiff timely pursued and exhausted the administrative prerequisites required for an employment-discrimination civil action under Ohio law, including obtaining a Notice of Right to Sue issued by the Ohio Civil Rights Commission.

60. Defendant discriminated against Plaintiff with respect to the terms, conditions, privileges, and opportunities of employment because of his age, in violation of Ohio Revised Code § 4112.02(A).

61. Defendant also discriminated against Plaintiff in connection with internal job opportunities and discharged or separated Plaintiff without just cause within the meaning of Ohio Revised Code § 4112.14(A), even though Plaintiff was over forty, physically able to perform the work, and otherwise met the established requirements of the job and comparable internal assignments.

62. Defendant's conduct was intentional and, for the reasons alleged above, also operated in the alternative as a facially neutral staffing and redeployment practice that disproportionately excluded older employees from meaningful consideration for available work.

63. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered lost wages, lost benefits, noneconomic harm, and other damages recoverable under Ohio law, and Plaintiff is entitled to all legal and equitable relief authorized by Ohio Revised Code Chapter 4112, including attorney's fees where permitted by law.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully demands judgment in his favor and against Defendant for declaratory relief; back pay; lost benefits; reinstatement or, if reinstatement is not feasible, front pay; liquidated damages under the ADEA; compensatory damages and punitive damages to the extent permitted by Ohio law; pre-judgment and post-judgment interest; and reasonable attorney's fees and costs to the extent permitted by law. Plaintiff further seeks all equitable relief necessary to make him whole.

Respectfully submitted,

*/s/ Desmond J. Cullimore*
Desmond J. Cullimore (0087610)
The Cullimore Law Firm, LLC
*Trial Attorney for Plaintiff*
3664 Hickory Rock Drive
Powell, Ohio 43065
Phone: (614) 372-9144
Fax:    (740) 829-5485
E-mail: desmond@cullimorelawfirm.com
*Counsel for Plaintiff Padmanabha Reddy*
*Iragamreddy*